| | | |
|---|---|---|
| JERRY GILLESPIE, | ) | |
| | ) | |
| Petitioner, | ) | No. 05 C 00264 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| BRADLEY J. ROBERT,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jerry Gillespie has filed an amended petition for writ of habeas corpus

under 28 U.S.C. § 2254. In his petition, he presents six claims: (1) the State of Illinois

failed to tender exculpatory evidence of statements made by Johnell Alexander (a key

figure in the State's theory of the crime at trial) that corroborated Gillespie's claims of

innocence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) the State violated

*Brady* by failing to tender exculpatory evidence of a pattern and practice of abuse by

police officers; (3) his trial counsel was constitutionally ineffective by not investigating

and interviewing Alexander; (4) his trial counsel was ineffective by not investigating

complaints of systemic police abuse; (5) he is actually innocent; and (6) the trial court

erred by admitting highly prejudicial gun evidence. R. 112, Am. Habeas Pet. The State

moves to dismiss the petition as time-barred under 28 U.S.C. § 2244(d) [R. 122]. For

---

[1]The original respondent in this case was Nedra Chandler. But because Bradley J. Robert is the warden of Centralia Correctional Center (where Gillespie is currently imprisoned, *see* R. 122, Resp.'s Br. at 1 n.1), Robert is the proper party respondent. *See* Rule 2(a), Rules Governing § 2254 Cases; *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). The Clerk's Office is directed to substitute Bradley J. Robert as the proper respondent.

the reasons that follow, the State's motion to dismiss is granted in part and denied in part. In a later opinion, the Court will address the merits of the remaining, timely claims.

## I. Background

The following excerpts from Gillespie's lengthy procedural history pertain to the State's motion to dismiss. In 1994, Gillespie was convicted of first-degree murder for his participation in the fatal shooting of Jeffrey Rodgers, and sentenced to 40 years' imprisonment. *People v. Gillespie*, 941 N.E.2d 441, 444, 448 (Ill. App. Ct. 2010). On direct appeal, the Illinois Appellate Court affirmed his conviction on June 30, 1997. R. 112-21, Pet.'s Exh. V, Vol. 7 at 1464, 1465. Gillespie did not file a petition for leave to appeal (PLA) in the Illinois Supreme Court. R. 122, Resp.'s Br. at 2 & n.2.

Instead, while his direct appeal was pending, Gillespie filed his first post-conviction petition in the Circuit Court of Cook County on June 11, 1997. Pet.'s Exh. V, Vol. 7 at 1485. The trial court dismissed the petition, *id.* at 1497, and Gillespie filed a notice of appeal. Gillespie later moved to stay the appeal; the Illinois Appellate Court granted the motion, "remand[ing] to the trial court for the sole purpose of allowing [Gillespie] to amend his post-conviction petition and for the trial court to rule on same on or before July 31, 1998." *id.* at 1510.

But an amended post-conviction petition was not filed by July 31, 1998. Instead, the Illinois Appellate Court granted Gillespie's motion to extend the time period for the Circuit Court's ruling until September 30, 1998. R. 127-2, Pet.'s Resp., Exh. 3 ¶ 1. On September 30, 1998, Gillespie filed a "Motion to Dismiss Appeal Without Prejudice or

Alternatively Motion to Extend Time Period for Circuit Court's Ruling on Limited Remand." Pet.'s Resp., Exh. 3. In this motion, Gillespie asked that the Illinois Appellate Court either dismiss his appeal without prejudice and allow him to re-file his appeal after the Circuit Court ruled on his amended petition, or extend the time period for the Circuit Court's ruling for another 60 days. *Id.* at 4. On October 7, 1998, the Illinois Appellate Court dismissed his appeal without prejudice. R. 122-1, Resp.'s Br., Exh. D (Oct. 7, 1998 Order). It was not until January 26, 1999[2] that Gillespie filed his First Amended Post-Conviction Petition. R. 129-1, Resp.'s Reply, Exh. G. The trial court dismissed the petition, the Appellate Court affirmed, and the Illinois Supreme Court denied Gillespie's petition for leave to appeal on March 24, 2004. Resp.'s Br., Exhs. E, F.

Gillespie then commenced federal habeas litigation in this Court. On January 14, 2005, he filed a habeas corpus petition under § 2254 [R. 4], which was answered by the State in April 2005 [R. 23]. The Court then stayed proceedings pending the exhaustion of his claims in state court [R. 69]. After litigating several post-conviction petitions in state court, *see* Am. Habeas Pet. at 4-6, Gillespie returned here in April 2011 and amended his federal habeas petition [R. 112]. The State now moves to dismiss the amended petition as time-barred [R. 129].

---

[2]In Gillespie's response brief, he asserts that he filed his First Amended Post-Conviction Petition on January 5, 1999. *See* R. 127, Pet.'s Resp. at 8. But he acknowledges filing the petition on January 26, 1999 elsewhere in that brief, as well as in his amended habeas petition itself. *Id.* at 3.; Am. Habeas Pet. ¶ 9. Although the date stamp on the actual post-conviction petition is not completely legible, the Notice of Filing and Certificate of Service attached to the petition indicate that it was filed on January 26, 1999. R. 129-1, Resp.'s Reply, Exh. G.

## II. Waiver or Forfeiture of Timeliness Defense

At the outset, Gillespie contends that the State has waived its timeliness defense by not presenting it either in its April 2005 answer to Gillespie's original habeas petition, or in any state court proceeding. *See* Pet.'s Resp. at 2-7. The State responds that an amended habeas petition wholly supersedes the original petition, allowing it to raise new affirmative defenses. Resp.'s Reply at 7-9. Moreover, federal law creates the statute of limitations governing federal habeas petitions, so it is irrelevant that the timeliness defense was not raised earlier in state court. *Id.* at 9-10.

Addressing these arguments in reverse order, the Court agrees with the State that it was not required to raise a timeliness defense based on a federal statute of limitations in earlier state court proceedings. Gillespie's § 2254 petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. *See Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). AEDPA's statute of limitations has no bearing on the timeliness of a state post-conviction petition, which is governed by a *separate* state statute of limitations. *See, e.g.*, 725 ILCS 5/122-1(c). To be sure, the State may waive a timeliness defense to state post-conviction petitions—based on Illinois's statute of limitations—by not asserting the defense in prior state court proceedings. *See, e.g., People v. Boclair*, 789 N.E.2d 734, 740 (Ill. 2002). But Gillespie's cited cases do not require the State to assert a *federal* timeliness defense based on AEDPA's statute of limitations in prior *state* court proceedings. *See, e.g., Grigsby v. Cotton*, 456 F.3d 727, 731 (7th Cir. 2006) (State waived AEDPA timeliness defense on

appeal by not raising it in *federal* district court). Accordingly, the State has not waived or forfeited its AEDPA timeliness defense simply by not raising it in state court.

Gillespie has more success with his first argument that the State waived its timeliness defense by not presenting it in its April 2005 answer. An answer to a federal habeas petition "must state whether any claim in the petition is barred by . . . a statute of limitations." Rules Governing § 2254 Cases Rule 5(b); *see also Perruquet v. Briley*, 390 F.3d 505, 517, 519 (7th Cir. 2004) (failure to raise an affirmative defense in an answer to a habeas petition will ordinarily result in a forfeiture of that defense). The State here does not dispute that it failed to raise a timeliness defense in its answer. Instead, citing to *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000), it asserts that an amended habeas petition (like an amended civil complaint) completely supersedes the original petition, wiping the slate clean and allowing the State to raise new and previously unmentioned affirmative defenses.[3] So in its view, it may advance an untimeliness defense against all of Gillespie's claims now.

This reading of *Massey* stretches a general rule too far. *Massey* allowed the defendant to assert new affirmative defenses to an amended complaint partly because the amended complaint presented a *new* theory of liability. *See id.* ("To hold to the contrary would, in essence, enable plaintiffs to change their theory of the case while

---

[3]Although *Massey* and others are civil cases rather than § 2254 habeas cases, the Federal Rules of Civil Procedure do apply to habeas cases, so long as the former are consistent with the Habeas Corpus Rules. *See Woodford v. Garceau*, 538 U.S. 202, 208 (2003) ("The Federal Rules of Civil Procedure apply in the context of habeas suits to the extent that they are not inconsistent with the Habeas Corpus Rules." (citations omitted)).

simultaneously locking defendants into their original pleading."). *Massey* does not hold that an amended habeas petition allows the respondent to raise as many affirmative defenses as it wants to claims both new *and* old. And indeed, other cases make clear that although amended pleadings generally do supersede prior pleadings, they may not wipe the slate completely clean: "An amended pleading *ordinarily* supersedes the prior pleading. The prior pleading is in effect withdrawn *as to all matters not restated* in the amended pleading . . . ." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) (emphases added) (internal quotation marks and citation omitted). In other words, an original pleading, once amended, may still perform a function in the case where the allegations in the original pleading are "specifically incorporated" into the new pleading. *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (citation omitted).

Putting these principles together, an amended habeas petition generally does supersede the original petition, but any claim that the amended petition specifically incorporates or repeats from the original petition remains. So the respondent *is* locked into any defenses previously raised (or not raised) to those preexisting claims. But any new claims presented by the amended petition did not even exist when the opportunity for the State to assert affirmative defenses came and went; the State therefore could not have waived its defenses against those then-non-existing claims. Any new claims presented by an amended petition are therefore fair game for the State to raise previously unmentioned defenses against them.

Accordingly, the State here has forfeited its AEDPA timeliness defense as to some, but not all, of Gillespie's habeas claims. By not raising timeliness as a defense in its answer to Gillespie's original habeas petition, the State forfeited it back in April 2005.[4] *Perruquet*, 390 F.3d at 519. And as Gillespie points out, he incorporated some of his original claims into his amended petition—not by simply attaching it as an exhibit (as he argues, *see* R. 176, Pet.'s Supp. Br. at 7), but by fully litigating those same claims again in both the petition and the accompanying brief. Thus, the State may not challenge the timeliness of those original claims. But Gillespie overlooks the effect of raising *new* claims in his amended habeas petition (or as he puts it,"supplement[ing]" his original petition). Because his amended petition supersedes the original one, the State now has a new opportunity to assert new defenses against Gillespie's new claims. And this time, it has not forfeited its opportunity: this motion to dismiss was filed before the State's answer to Gillespie's amended habeas petition [R. 150]. In sum, the State may assert a timeliness defense only against the new claims raised in Gillespie's amended habeas petition.

---

[4]The State argues, in its reply brief, that any forfeiture should be excused in light of Gillespie's "inaccurate representations regarding facts bearing on the timeliness of his petition." Resp.'s Reply at 10. The specific misrepresentation the State complains about is that its then-counsel considered raising a timeliness defense back in 2005, but decided not to after Gillespie's then-attorney provided him with a copy of his state court docket sheet. *Id.* That docket sheet erroneously reported that Gillespie had filed his second state post-conviction proceeding in September 1998 when he really filed it in January 1999. *See* Resp.'s Reply, Exh. I at 6. But then-counsel for the State could have accessed Gillespie's actual second state post-conviction petition (not just the docket sheet), and the petition had the correct date stamped on the first page. *See* Resp.'s Reply, Exh. G. Any reliance upon Gillespie's then-counsel to furnish him with the correct date does not excuse the State's forfeiture.

So what are Gillespie's new claims? In his original habeas petition, he presented six grounds for habeas relief: (1) his false confession was coerced, (2) the State violated *Brady* by not disclosing "a pattern and practice" of police conduct, (3) he is actually innocent, (4) the trial court erroneously dismissed his post-conviction petition, (5) his trial counsel was ineffective for not investigating evidence of systemic police abuse and not arguing that several guns were inadmissible, and (6) the trial court erroneously admitted the guns into evidence. R. 112-22, Pet.'s Exh. V, Vol. 7 at 1548-49. Of these six grounds, Gillespie's amended habeas petition repeats four: (1) the *Brady* claim concerning the State's failure to disclose police misconduct, (2) the actual innocence claim, (3) the ineffective assistance claim about trial counsel's failure to investigate police abuse, and (4) the erroneous admission of evidence claim. Am. Habeas Pet. at 12-17. Because the State has forfeited its timeliness defense as to those four claims, its motion to dismiss those claims as untimely is denied.

But Gillespie's amended petition also presents two new claims: (1) a *Brady* claim that the State did not disclose material exculpatory statements by Johnell Alexander, and (2) a claim that Gillespie's trial counsel was constitutionally ineffective because counsel failed to investigate and interview Alexander. *Id.* at 10-11, 13-15. Because the State is permitted to assert that those claims are time-barred, the Court proceeds to consider whether they were timely brought under AEDPA.

### III. Statute of Limitations

Generally speaking, under AEDPA, a state prisoner seeking collateral review in federal court must file his § 2254 habeas petition within one year of the date on

which the state-court judgment becomes final. 28 U.S.C. § 2244(d)(1). Specifically, this one-year statute of limitations runs from four possible dates, only two of which are at issue here. *See* Resp.'s Br. at 7. One possible date that starts the clock on Gillespie's habeas petition is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The other is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The limitations period runs from the later of these dates, 28 U.S.C. § 2244(d)(1), but the clock stops ticking for any time during which "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). So the one-year clock either starts when the conviction becomes final or when the factual predicates of the habeas claims could have been discovered, but the clock stops during the pendency of any properly filed state post-conviction petition.

## A. The Trigger Date Under § 2244(d)(1)(A)

The first possible date that starts the clock for Gillespie's habeas petition is the date on which his conviction became final. A conviction ordinarily becomes "final" when direct review to the state courts is exhausted and the time for filing a petition for a writ of certiorari to the United States Supreme Court has elapsed or a timely filed certiorari petition has been finally denied. *Beard v. Banks*, 542 U.S. 406, 411 (2004) (citation omitted); *see also Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002). But Gillespie did not fully exhaust direct review in state court; the appellate court

affirmed his conviction and sentence on June 30, 1997, *see* Pet.'s Exh. V, Vol. 7 at 1464, 1465, and Gillespie did not apply for a petition for leave to appeal (PLA) from the Illinois Supreme Court. So the conviction became final once the time for filing his PLA expired. *Owens v. Boyd*, 235 F.3d 356, 357 (7th Cir. 2000). The State asserts, and Gillespie does not dispute, that Gillespie had 21 days to file his PLA after the Illinois Appellate Court affirmed his conviction and sentence.[5] Resp.'s Br. at 7; *see also* Ill. Sup. Ct. R. 315(b) (1997) ("[A] party seeking leave to appeal must file the petition for leave in the Supreme Court within 21 days after entry of the judgment of the Appellate Court."). So one possibility is that the clock started on July 21, 1997.

## B. Trigger Dates Under § 2244(d)(1)(D)

The other possibility is a later start date under § 2244(d)(1)(D): the date on which the factual predicates of Gillespie's claims could have been discovered through the exercise of due diligence. Under this provision's objective standard, the one-year limitations period runs from the date that the petitioner could have discovered the important facts, not when he actually discovered them or realized their legal significance. *Owens*, 235 F.3d at 359. This standard does not require "the maximum

---

[5]The version of the Illinois Supreme Court Rules in effect in 1997 allowed appellants to seek a two-week extension on the 21-day time limit for filing a PLA, for a maximum of 35 days. Ill. Sup. Ct. R. 315(b) (1997). There appears to be some uncertainty whether the AEDPA statute of limitations runs from the normal 21 days or from the maximum 35 days after the Illinois Appellate Court affirms the appellant's conviction. *See United States ex rel. Baker v. Ramos*, 697 F. Supp. 2d 987, 991 & n.3 (N.D. Ill. 2010). But Gillespie does not dispute, in his response brief, that the statute of limitations runs from 21 days after his conviction was affirmed. *See* Pet.'s Resp. at 7-10. And ultimately the outcome is the same. Because Gillespie's first state post-conviction petition was filed *before* the Illinois Appellate Court affirmed his conviction, the clock was immediately stopped (as discussed below). No time ticked off the clock regardless whether Gillespie had 21 or 35 days to file his PLA.

feasible diligence, but only 'due,' or reasonable diligence." *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004) (quoting *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000) (internal quotation marks omitted)). Thus, if Gillespie, with reasonable diligence, could have discovered the factual predicates underlying his *Brady* and ineffective assistance claims about Johnell Alexander at some point after July 21, 1997, he gets the benefit of having the clock start at that later date.

### 1. *Brady* Claim

Gillespie's *Brady* claim alleges that the State never disclosed that Alexander was held in police custody for two days—where he denied Gillespie's involvement in the shooting—and was then released without ever being charged. Am. Habeas Pet. ¶ 29. Because the State's theory at trial was that Alexander masterminded the murder, Gillespie contends that the evidence of Alexander's denial of involvement was exculpatory and material evidence. *Id.* ¶ 30. This *Brady* claim does not directly challenge his attorney's performance, so Gillespie's clock starts on the date that he, through his attorney and other representatives, could have discovered the factual predicate of this claim—Alexander's exculpating Gillespie to the police—by acting with reasonable diligence. *See Ford v. Gonzalez*, 683 F.3d 1230, 1236 (9th Cir. 2012)*; Wood v. Spencer*, 487 F.3d 1, 5-6 (1st Cir. 2007); *Daniels v. Uchtman*, 421 F.3d 490, 492 (7th Cir. 2005). These cases demonstrate that § 2244(d)(1)(D) starts the one-year clock on the date that habeas petitioners alleging that the State suppressed exculpatory evidence about trial witnesses could have interviewed those witnesses. For example, in *Wood*, a habeas petitioner brought a *Brady* claim alleging that the State failed to

disclose a conversation between the police and the murder victim that would have corroborated his defense at trial that he killed the victim in self-defense. 487 F.3d at 2-3. The First Circuit held that the petitioner, through his trial counsel, could have reasonably discovered the conversation's contents before trial by interviewing the police officer. *Id.* at 5 ("Despite his knowledge that a conversation had occurred, the record is devoid of any suggestion that [petitioner's] counsel expended the slightest effort—let alone due diligence—to try to interview [the officer] or otherwise to ferret out the nature of [the officer's] exchange with the decedent."); *see also Daniels*, 421 F.3d at 492 (petitioner could have reasonably discovered, on the date that his representatives contacted a trial witness against him but did not ask about pending charges, that the witness had cut a deal for testimony). In so holding, *Wood* reasoned that specific knowledge of the exculpatory conversation could be objectively and fairly imputed to counsel because he was aware that the conversation occurred. 487 F.3d at 5; *see also Ford*, 683 F.3d at 1236 (due diligence required petitioner to investigate whether a witness against him sought and received benefits in exchange for assisting law enforcement once trial counsel was aware of the possibility of a deal).

Likewise, although it was not until April 27, 2009 that Gillespie discovered Alexander's exculpatory police interview, *see* Pet.'s Exh. V, Vol. 7 at 1460-62, Gillespie could have discovered this information much earlier had he exercised reasonable diligence. Before trial, the State tendered a police report that listed interviewing a person named "Alexander, John L. . . . (AKA 'KB')." R. 112-20, Pet.'s Exh. V, Vol. 6 at 1369. Gillespie argues that at the time he only knew the nickname "KB," Am. Habeas

Pet. ¶ 27, but the report clearly provides Alexander's real name along with that alias. The report even lists Alexander's address. Pet.'s Exh. V, Vol. 6 at 1369. This report gave Gillespie all the information he needed to track Alexander down.

And due diligence required that Gillespie, through his attorney, have done so. They both knew at trial that the State theorized that Alexander masterminded the shooting and ordered Gillespie to stand lookout. And they both knew that Gillespie maintained his innocence. Thus, even if they were not specifically aware that Alexander had exculpated Gillespie to the police, they reasonably should have been aware that Alexander possessed valuable information supporting Gillespie's innocence defense. *Wood*, 487 F.3d at 5. Having been so aware, due diligence objectively required Gillespie, through his attorney, to pursue that lead by locating and interviewing Alexander. *Ford*, 683 F.3d at 1236; *Wood*, 487 F.3d at 5. Indeed, had Gillespie made these reasonable efforts before trial, they would have paid off: Alexander would have revealed what he told the police. Pet.'s Exh. V, Vol. 7 at 1462.

In sum, the factual predicate of Gillespie's *Brady* claim could have been discovered through due diligence at the time of his trial, which ended on June 16, 1994. *See* R. 112-10, Pet.'s Exh. V, Vol. 2 at 419. Because this date is earlier than the date his judgment became final, the one-year clock on his *Brady* claim started on July 21, 1997.

## 2. Ineffective Assistance Claim

Gillespie's ineffective assistance claim is different. This claim asserts that Gillespie's trial counsel was constitutionally ineffective because he failed to investigate

13

and interview Alexander. Am. Habeas Pet. ¶¶ 52-53. Had counsel interviewed Alexander, he could have contradicted the State's theory of the crime at trial. *Id.* ¶ 53. So the two claims are linked by the same factual predicate: Alexander's exculpating Gillespie to the police. But Gillespie's ineffective assistance claim has an additional predicate—counsel's failing to investigate Alexander. *See Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001) ("And so to have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting *both* unreasonable performance *and* resulting prejudice." (emphasis added)). Because Gillespie knew by the end of his trial that his attorney had not investigated Alexander, *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005), the § 2244(d)(1)(D) start date for this claim depends on when he could have discovered what Alexander had told the police.

Unlike his *Brady* claim, Gillespie's ineffective assistance claim does challenge the performance of his trial counsel. So although reasonable diligence in both claims requires that Gillespie have eventually investigated what Alexander told the police (as discussed), due diligence in the specific context of his ineffective assistance claim imposes a lighter burden in the pretrial stage. After all, he alleges that his counsel's failure to investigate before trial was, by definition, unreasonable. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984) ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."). So it would be unreasonable to require Gillespie, allegedly without the assistance of reasonable

counsel, to have interviewed Alexander before trial. After trial, Gillespie could not have investigated Alexander on his own due to his imprisonment; due diligence takes into account that prisoners are limited by their physical confinement. *Schlueter v. Varner*, 384 F.3d 69, 75 (3d Cir. 2004); *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004). And he commenced state post-conviction proceedings on June 11, 1997 *pro se* and without representatives willing to interview Alexander on his behalf; he could not reasonably have discovered what Alexander told the police at that point either. *Cf. Ford*, 683 F.3d at 1236 (petitioner could have interviewed a witness through his wife, who lived with the witness); *Schlueter*, 384 F.3d at 75 (petitioner could have interviewed a witness through his parents, who had been actively involved in his case for several years).

But once Gillespie found *separate* post-conviction counsel, he, through his new attorneys (who are not alleged to have been ineffective), reasonably could have interviewed Alexander. Indeed, he and his new attorneys had every incentive to do so. And they had the opportunity: his new attorneys repeatedly asked the Illinois Appellate Court to allow them additional time before the circuit court to amend his *pro se* post-conviction petition. Pet.'s Resp., Exh. 3 ¶ 1. So due diligence required that Gillespie, through his new attorneys, have interviewed Alexander (using the same information contained in the police report), at some point before filing that amended petition. And again, had they done so, Alexander would have spilled the beans. By the filing date of Gillespie's amended petition (January 26, 1999, *see* Am. Habeas Pet. ¶ 9), he therefore could have discovered the factual predicate of his ineffective assistance

claim. This date is later than the date his conviction became final, so the one-year clock on his ineffective assistance claim starts on January 26, 1999.

### C. Statutory Tolling

Under § 2244(d)(2), the statute of limitations is tolled during the pendency of any properly filed state post-conviction petition. The Court next determines when the clock on each of Gillespie's claims was statutorily tolled.

### 1. *Brady* Claim

The parties agree that once Gillespie's clock started on July 21, 1997 for his *Brady* claim, it was immediately stopped due to the pendency of his first state post-conviction petition (which was filed on June 11, 2007). The State argues that the clock started running again on October 8, 1998, the day after the Illinois Appellate Court dismissed Gillespie's first post-conviction petition. *See* Resp.'s Br., Exh. D. Because Gillespie did not file another post-conviction petition until January 26, 1999, the State maintains that 110 days (from October 8, 1998 to January 26, 1999) ticked off the clock.

Gillespie disagrees. He believes that no time elapsed during that period at all because he disputes that the Illinois Appellate Court dismissed his first post-conviction petition. According to Gillespie, the appeal of the dismissal of his petition had been stayed for months in order for Gillespie to have a limited remand in state trial court: first until July 31, 1998, then until September 30, 1998. Pet.'s Exh. V, Vol. 7 at 1510; Pet.'s Resp., Exh. 3 ¶ 1. And in September 30, 1998, Gillespie's then-attorney filed a "Motion to Dismiss Without Prejudice or Alternatively Motion to Extend Time Period

16

for Circuit Court's Ruling on Limited Remand in the Illinois Appellate Court" in order to return to the trial court to litigate facts not in the record. Pet.'s Resp. at 7; Pet.'s Resp., Exh. 3 ¶ 1. The Illinois Appellate Court granted his motion. Oct. 7, 1998 Order. So Gillespie appears to advance two arguments: first, that the Illinois Appellate Court dismissed his petition with leave to reinstate (instead of dismissing without prejudice), and second, that the Illinois Appellate Court granted his motion with the intent to allow him to re-file his amended post-conviction petition without time ticking off the clock. Pet.'s Resp. at 8-9.

As to Gillespie's first argument, it is true that there is a legal difference between a dismissal without prejudice and a dismissal with leave to reinstate. A dismissal with leave to reinstate continues to toll the statute of limitations, but a dismissal without prejudice does not. *Compare Arrieta v. Battaglia*, 461 F.3d 861, 863 (7th Cir. 2006) (a dismissal with leave to reinstate "has the effect of a stay and does not act as a final judgment until the time specified by the court for reinstatement has expired" (citation omitted)), *with Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000) ("But if the suit is dismissed without prejudice, meaning that it can be refiled, then *the tolling effect of the filing of the suit is wiped out* and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." (emphasis added) (citations omitted)). The two dispositions do affect the statute of limitations differently.

But the plain text of the Illinois Appellate Court's order states that "Defendant-Appellant's Motion to Dismiss Appeal Without Prejudice is granted." Oct. 7, 1998

17

Order. Thus, this is not an order staying the litigation, or even dismissing the post-conviction petition with leave to reinstate. Indeed, after Gillespie appealed the Circuit Court's dismissal of his amended post-conviction petition to the Illinois Appellate Court, a different panel of appellate judges heard his appeal under a different appellate docket number. Resp.'s Br., Exh. E. This further indicates that Gillespie's amended post-conviction petition was a new and altogether separate petition, rather than a continuance of the first. C*f. United States v. Ligas*, 549 F.3d 497, 502 n.2 (7th Cir. 2008) ("There is a difference between dismissing a suit without prejudice and dismissing a suit with leave to reinstate; after a dismissal without prejudice, the plaintiff can resurrect his lawsuit *only by filing a new complaint*." (emphasis added) (citation omitted)). Thus, Gillespie's first argument is undermined by the Illinois Appellate Court's order.

Gillespie also contends that, plain text of the order notwithstanding, the Illinois Appellate Court intended to allow Gillespie to re-file an amended post-conviction petition without any effect on the statute of limitations. This intent argument is presumably based on the appellate court's repeated willingness to pause his appeal of the dismissal of his first petition.

His argument has two flaws. First, a federal habeas court arguably ought not inquire into the intent of state court decisions on state post-conviction petitions. *Cf. Williams v. Taylor*, 529 U.S. 420, 436 (2000) ("In keeping this delicate balance we have been careful to limit the scope of federal intrusion into state criminal adjudications and to safeguard the States' interest in the integrity of their criminal and collateral

18

proceedings." (citations omitted)). But more importantly, the Illinois Appellate Court's intent to dismiss the petition without prejudice is clear. Gillespie's then-attorney's motion asked the appellate court to dismiss the petition without prejudice "allowing him to re-file his appeal after the circuit court's final ruling on the matter," or "extend the time period for the circuit court's ruling on the issues presented by the limited remand" by an additional 60 days. Pet.'s Resp., Exh. 3 at 4. The appellate court not only chose to grant the motion to dismiss without prejudice instead of extending the time period, but also *crossed out* language in the order that would have allowed Gillespie to re-file his appeal. Oct. 7, 1998 Order. Thus, the court's intent was *not* to allow Gillespie to re-file or otherwise continue his appeal, but was instead to dismiss the case without prejudice.[6]

So as a result of the Illinois appellate court's dismissal without prejudice, the clock on his *Brady* claim ran for 110 days until Gillespie filed his amended post-conviction petition on January 26, 1999. This stopped the clock until March 24, 2004, when the Illinois Supreme Court denied his PLA. Resp.'s Br., Exh. F. Then the clock started ticking again on March 25, 2004 until it ran out, 255 days later, on December 6, 2004.[7] Because Gillespie did not present this *Brady* claim until he filed his amended federal habeas petition on April 21, 2011, that claim, while troubling, is time-barred.

---

[6]To the extent that Gillespie maintains that the Illinois Appellate Court intended Gillespie to re-file by issuing a mandate to the circuit court, *see* Pet.'s Resp. at 9, an appellate court issues a mandate to the Circuit Court as a purely ministerial act. *See* Ill. Sup. Ct. R. 369(c) (differentiating a mandate from a remand).

[7]Because day 255 fell on a weekend, the statute of limitations expired on the following Monday. *Johnson v. McBride*, 381 F.3d 587, 588 (7th Cir. 2004).

And it would still be untimely even if it related back to the filing date of his original federal habeas petition (under Federal Rule of Civil Procedure 15(c)), which was filed on January 14, 2005. Finally, by not responding to the State's contention that his statute of limitations should not be equitably tolled, *see* Resp.'s Br. at 12-13, he concedes that equitable tolling is unwarranted. *See Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011). Accordingly, the State's motion to dismiss Gillespie's *Brady* claim regarding Johnell Alexander is granted.

## 2. Ineffective Assistance Claim

Because the clock starts on January 26, 1999 for Gillespie's ineffective assistance claim, 110 days did not tick off the clock for the period after the Illinois Appellate Court dismissed his first post-conviction petition. Instead, the clock was immediately stopped due to the pendency of his amended post-conviction petition until March 24, 2004, when the Illinois Supreme Court denied his PLA. Resp.'s Br., Exh. F. He therefore had 365 days to bring this claim after March 25, 2004, so the clock ran out on March 25, 2005. Although Gillespie did file his original federal habeas petition on January 14, 2005 (before his year was up), he did not present his ineffective assistance claim concerning Johnell Alexander on that date. In fact, it was not until he filed his amended federal habeas petition on April 21, 2011 that he presented this claim to this Court. Because the pendency of Gillespie's original federal habeas petition did not toll AEDPA's statute of limitations, *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), this ineffective assistance claim is untimely unless it relates back to the filing date of his original habeas petition.

Under the Federal Rules of Civil Procedure, an amendment to a pleading can relate back to the date of the original pleading when it asserts a claim that "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). But a criminal trial, conviction, or sentence itself is not a transaction or occurrence for purposes of relation back. *Mayle v. Felix*, 545 U.S. 644, 662 (2005). Instead, to relate back, Gillespie's amended habeas petition must state claims that share a "common core of operative facts" with the claims presented in the original petition. *Id.* at 664.

There is no such common core of operative facts here. His original habeas petition alleged that his trial counsel was ineffective by not investigating evidence of systemic police abuse and not arguing that several guns were inadmissible. R. 112-24, Pet.'s Exh. V, Vol. 7 at 1592-94. Those original allegations are factually separate from the claim that trial counsel failed to investigate and interview Johnell Alexander; indeed, he could still bring those claims if Johnell Alexander had not even existed. *See United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." (citations omitted)); *United States ex rel. Delaola v. Pillow*, 2011 WL 2200088, at *6 (N.D. Ill. June 3, 2011) (factually separate claim does not relate back to original petition). Accordingly, Gillespie's ineffective assistance claim concerning Johnell Alexander does not relate back to January 14, 2005. And he again concedes

that there is no basis for equitable tolling. This claim is also time-barred, so the State's motion to dismiss Gillespie's ineffective assistance claim regarding Johnell Alexander is granted.

## IV. Conclusion

For the reasons discussed above, the State's motion to dismiss Gillespie's amended habeas petition is granted in part and denied in part.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2013